225 F.2d 473
 FORT DIX APARTMENTS CORP., a Corporation, Appellant,
v.
BOROUGH OF WRIGHTSTOWN, a Municipal Corporation, and I. Haines Croshaw, Collector of Taxes for the Borough of Wrightstown, New Hanover Township Board of Education, Intervenor,
County of Burlington, Intervenor.
SHERIDANVILLE, Inc., a Corporation, Appellant,
v.
BOROUGH OF WRIGHTSTOWN, a Municipal Corporation, and I. Haines Croshaw, Collector of Taxes for the Borough of Wrightstown,
Township of Springfield, a Municipal Corporation, and R. J. Beazley, Collector of Taxes for the Township of Springfield,
New Hanover Township Board of Education, Intervenor,
County of Burlington, Intervenor.
 No. 11512.
 No. 11513.
 United States Court of Appeals Third Circuit.
 Argued March 25, 1955.
 Decided August 23, 1955.
 
 Madison S. DuBois, Alexander Feinberg, Camden, N. J., for appellants.
 Robert W. Criscuolo, Mount Holly, N. J. (Parker, McCay & Criscuolo, Mount Holly, N. J., Dimon, Haines & Bunting, Mount Holly, N. J., William Wells, Attorney for County of Burlington, Bordentown, N. J., on the brief), for appellees.
 Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 These appeals raise the question whether the leasehold interests of two private corporations in apartment housing projects operated by them on the Fort Dix Military Reservation can be taxed by state authorities. It is clear and not disputed that the land on which the projects are located was an area within the exclusive jurisdiction of the United States when appellants entered the picture. Both appellants acquired the tracts in question from the United States on 75 year leases, conditioned upon their providing housing thereon for military and civilian personnel of the armed services. The leases recite that they were executed under the authority of the Act of August 5, 1947, 61 Stat. 774, 10 U.S. C.A. § 1270, providing for the lease of property by the Secretary and the National Housing Act, 1949, 63 Stat. 570, 12 U.S.C.A. § 1748, providing for the construction and financing of military housing. The Fort Dix Apartment Corp. lease provides that any buildings erected upon the leased premises become, upon completion, the property of the United States, leased to the corporation. Sheridanville's lease, on the other hand, provides that title to any improvements constructed on the leased premises remains in Sheridanville during the life of the lease, and vests in the United States on termination of the lease only if Sheridanville fails to remove the improvements at that time.
 
 
 2
 The Fort Dix Apartments project lies within the boundaries of the Borough of Wrightstown, New Jersey, and the Sheridanville project within this borough and the Township of Springfield, New Jersey. The borough has levied real estate taxes for 1953 on the Fort Dix Apartment Corp., based on an assessment of $4,050 for 28 acres of land and $306,750 for the improvements consisting of 300 apartment units. On Sheridanville, Inc. the borough has levied real estate taxes for 1952 and 1953, based on an assessment of $5,250 for 35 acres of land and $307,500 for 300 apartment units. Sheridanville has paid some of the taxes levied by the borough. The Township of Springfield has also levied real estate taxes on Sheridanville. These suits by the two corporations, consolidated on appeal, contest the power of the appellees, the taxing authorities, to collect any of these taxes, because of the jurisdiction of the United States over the project sites. The District Court sustained the taxing power asserted by the New Jersey municipalities. 125 F.Supp. 743.
 
 
 3
 Appellees agree that in surrendering to the United States exclusive jurisdiction over the military reservation, New Jersey lost all power to tax land and buildings on the reservation. See Surplus Trading Co. v. Cook, 1930, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091. They contend, however, that Congress has receded the right to tax such property as appellants' apartment projects, and that New Jersey has made appropriate provision for the imposition of the contested taxes. To support appellees' view, it is urged that the United States has consented to this taxation in the very statutes on which appellants' leases are based.
 
 
 4
 The Act of Aug. 5, 1947, authorizing leasing of Defense Department property, provides in part:
 
 
 5
 "Whenever the Secretary of War or the Secretary of the Navy shall deem it to be advantageous to the Government he is authorized to lease such real or personal property under the control of his Department as is not surplus to the needs of the Department within the meaning of the Act of October 3, 1944 (58 Stat. 765), and is not for the time required for public use, to such lessee or lessees and upon such terms and conditions as in his judgment will promote the national defense or will be in the public interest. Each such lease shall be for a period not exceeding five years unless the Secretary of the Department concerned shall determine that a longer period will promote the national defense or will be in the public interest. * * * Each such lease shall contain a provision permitting the Secretary of the Department concerned to revoke the lease at any time, unless the Secretary shall determine that the omission of such provision from the lease will promote the national defense or will be in the public interest. In any event each such lease shall be revocable by the Secretary of the Department concerned during a national emergency declared by the President. * * * The authority herein granted shall not apply to oil, mineral, or phosphate lands. * *
 
 
 6
 * * * * * *
 
 
 7
 "Sec. 6. The lessee's interest, made or created pursuant to the provisions of this Act, shall be made subject to State or local taxation. * * *" 61 Stat. 774, 775, 10 U.S. C.A. §§ 1270, 1270d.
 
 
 8
 The National Housing Act, concerned primarily with the insuring of mortgages for the construction of military housing, provides in part:
 
 
 9
 "Whenever the Secretary of the Army, Navy, or Air Force determines that it is desirable to lease real property within the meaning of the Act of August 5, 1947 (61 Stat. 774), to effectuate the purposes of this title, the Secretary concerned is authorized to lease such property under the authority of said Act upon such terms and conditions as in his opinion will best serve the national interest without regard to the limitations imposed by said Act in respect to the term or duration of the lease, and the power vested in the Secretary of the Department concerned to revoke any lease made pursuant to said Act in the event of a national emergency declared by the President shall not apply. * *" 63 Stat. 570, 576, 12 U.S.C.A. § 1748d.
 
 
 10
 In our view this provision of the National Housing Act merely permits leasing for military housing purposes, already covered by the general authorization of the 1947 Act, to be accomplished without regard to specified restrictions of the 1947 Act, when the elimination of these restrictions would serve the purposes of the Housing Act. Other provisions of the 1947 Act, including the language of Section 6 subjecting the lessee's interest to local taxation, apply to leases made under the authority of both Acts.
 
 
 11
 We have not overlooked the argument for a narrower view of the scope of the 1947 Act based upon legislative history indicating that the primary purpose of that Act was to provide for the leasing of stand-by defense plants. But the language of the Act extends the leasing authority to all non-surplus property under the control of the Defense Department except oil, mineral, or phosphate lands (an exception which would be unnecessary if the Act applied only to defense plants). An additional indication that the 1947 Act encompasses the leasing of property generally is found in Section 2 which repeals the prior authority for the leasing of War Department property generally, 27 Stat. 321. The Senate Report expresses the reporting committee's understanding that this prior leasing statute was being "entirely superseded". Sen.Rep. No. 626, 1947, 80th Cong. 1st Sess.
 
 
 12
 In our opinion the 1947 Act effectively expresses the consent of the United States to the taxation of the lessee's interest in the property leased here, and the National Housing Act leaves this consent unchanged. See Meade Heights, Inc., v. State Tax Comm'n, 1953, 202 Md. 20, 95 A.2d 280.
 
 
 13
 It is true that the congressional consent applies only to the lessees' interest, and not to any interest which the United States may have retained. However, appellants here have not shown, as in law they must to prevail, that the challenged local taxes were levied on the interest of the United States, rather than on their leasehold interest. See Siegfried v. Raymond, 1901, 190 Ill. 424, 60 N.E. 868.
 
 
 14
 Beyond congressional permission to tax, it is also necessary to the validity of the local taxes here that, pursuant to such permission, the state have granted the municipalities the power to levy the tax in question. We agree with the analysis made by the District Court showing that this has been accomplished here by a New Jersey statute* providing for the taxation as real estate of leasehold interests in property tax-exempt to the owner.
 
 
 15
 The judgment will be affirmed.
 
 
 
 Notes:
 
 
 *
 "When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate." N.J.L.1949, c. 177, p. 566, § 1, N.J.S.A. 54:4-2.3
 
 
 
 16
 McLAUGHLIN, Circuit Judge (dissenting).
 
 
 17
 I am unable to see how these seventy-five year apartment house leases can be brought within the 1947 Act which gave authority to lease defense plants to private industry for not more than five years. The plain reason for the reference in the 1949 statute to the 1947 law was to define the types of property which the Secretaries could use for the purpose of the Military Housing Insurance Act (the 1949 Act) as the district judge held.
 
 
 18
 Nor is there anything in the 1949 Act itself which will support this attempted taxation. The language of the Act relied on by the municipalities reads: "Nothing in this title shall be construed to exempt any real property acquired and held by the Commissioner under this title from taxation by any State or political subdivision thereof, to the same extent, according to its value, as other real property is taxed." 12 U.S.C.A. § 1748f. That clause means here as it does in other titles of the National Housing Act[1] that where property mortgaged under the National Housing Act is acquired by the Commissioner it is not exempted from taxation merely because of the new ownership by an agency of the United States.
 
 
 19
 The premises involved are within the Fort Dix military reservation and under the exclusive jurisdiction of the United States. They are occupied by military personnel stationed at Fort Dix. They were erected for the purpose of relieving the acute housing shortage at the Reservation and to increase rental housing accommodations there available to military and civilian personnel. All of the various facilities are provided by the Reservation authorities on a basis of actual cost. There are no services furnished by the municipalities.
 
 
 20
 Without sound basis under either statute the majority decision is doubly unfortunate in greatly weakening as it does the fine inducement to remain in the armed services given by the 1949 Act to experienced married service men by supplying them with housing they can afford and thus enabling them to have normal married lives within the military establishment.
 
 
 21
 I would reverse the district court judgment.
 
 
 
 Notes:
 
 
 [1]
 Title II of the National Housing Act, Act of June 27, 1934, Chapter 847, § 208, 48 Stat. 1252, 12 U.S.C.A. § 1714; also in Title VI, Act of March 28, 1941, Chapter 31, § 1, 55 Stat. 61, 12 U.S.C.A. § 1741; and in Title VII, Act of August 10, 1948, Chapter 832, Title IV, § 401, 62 Stat. 1281, 12 U.S.C.A. § 1747j