**GLOBE NEWSPAPER COMPANY**

v.

**The UNITED STATES.**

No. 38–78.

United States Court of Claims.

April 16, 1980.

John S. Brown, Boston, Mass., atty. of record, for plaintiff. Paul J. Lambert, Justin P. Morreale, Francis A. Boyle, George P. Mair, and Bingham, Dana & Gould, Boston, Mass., of counsel.

James L. Malone, III, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Theodore D. Peyser, Jr., Washington, D. C., of counsel.

Before DAVIS, KASHIWA and SMITH, Judges.

## ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

SMITH, Judge:

This income tax refund case is before the court on cross-motions for partial summary judgment. We have heard oral argument on the issue presented whether plaintiff is entitled to deduct, on its income tax return for its taxable year ended December 31, 1974, the entire amount of $1,544,238 in real estate taxes assessed on January 1, 1974, against plaintiff by the City of Boston for the 18-month period January 1, 1974 through June 30, 1975. For the reasons discussed below, we uphold the disallowance by the Internal Revenue Service (IRS) of $514,666 of the $1,544,238 claimed by plaintiff as a deduction for the real estate taxes.

### The Facts

Prior to 1973, the fiscal year of the towns and cities of Massachusetts coincided with the calendar year. Real estate taxes imposed by the towns and cities for the year were required to be assessed on January first. January 1 was also the date on which liens securing payment of the real estate taxes attached to the real estate. The real estate taxes became due and payable on July first of each year. They were payable without penalty through November first of the year in which payable.

In the early 1970's, the Massachusetts legislature enacted legislation changing the fiscal year of the towns and cities of Massachusetts from a calendar year to a year ending June 30. It appears that the legislature enacted the change in order to enable the towns and cities to reduce their short-term borrowing and to enable them to pay less interest on money borrowed on a short-term basis.[1] Under the changed provisions, all taxes imposed by the towns and cities of Massachusetts were required to be "assessed as of January first preceding the fiscal year with respect to which the taxes are assessed."[2] The lien provisions remained unchanged, making "taxes assessed upon land * * * a lien thereon from January first in the year of assessment."[3] Thus the *month and day* of the assessment and of attachment of the lien for real estate taxes imposed by the towns and cities did not change; the *period* for which the taxes were assessed on January first was changed, in effect, from the year commenc-

---

1. These goals were to be achieved via the acceleration effected by the Fiscal Cycle Change legislation in the billing and collection processes for real estate taxes imposed by the towns and cities.

2. Mass.Ann.Laws ch. 59, § 21 (1978).

3. Mass.Ann.Laws ch. 60, § 37 (1978).

ing with the day of assessment, to the year commencing 6 months later (on July 1). July 1 was to remain the date on which taxes became due and payable so that in effect under the change the taxes for a 12-month period would become due and payable on the first day of the first month of the taxable period rather than on the first day of the sixth month. The penalty provisions were changed. Whereas formerly a taxpayer had 10 months of the taxable period within which payment of the entire tax could be deferred without penalty, the new legislation permitted deferral of 50 percent of the tax for 10 months (to May 1) without penalty, but the deferral for the other 50 percent was permitted for only 4 months (to November 1).

The state legislative changes provided that the first fiscal year ending June 30 would commence July 1, 1974. To facilitate the change to the new fiscal year, the legislation provided for an 18-month transitional fiscal period from January 1, 1973, to June 30, 1974.[4] Two-thirds of the real estate taxes needed for the transitional fiscal period were to be assessed on January 1, 1973; the other one-third was to be assessed on January 1, 1974. The January 1, 1974, assessment was to be due and payable on March 15, 1974, with May 1, 1974, as the last date for payment without penalty.

Plaintiff in an accrual basis, calendar year taxpayer incorporated in Massachusetts and having its principal place of business in Boston. On January 1, 1974, the City of Boston assessed against plaintiff real estate taxes for two time periods. For the 6-month period January 1, 1974, to June 30, 1974, plaintiff was assessed $514,927. (This assessment was the second of the two assessments made against plaintiff for the

18-month transitional fiscal period.) Also on January 1, 1974, the City of Boston made its assessments for its fiscal year July 1, 1974–June 30, 1975, for which period plaintiff was assessed $1,029,331. Plaintiff paid the $514,927 assessment on May 16, 1974. As permitted by Massachusetts law, it paid the $1,029,331 assessment in two installments: $514,665 on October 18, 1974, and $514,666 (the amount disallowed for 1974) on April 30, 1975. On its federal income tax return for its taxable year ended December 31, 1974, plaintiff claimed a deduction of the aggregate of $1,544,258 for real estate taxes which the City of Boston had assessed against it on January 1, 1974. Relying on section 461(d)(1) of the Internal Revenue Code of 1954,[5] the IRS disallowed $514,666 of the aggregate deduction.

Plaintiff filed a timely amended corporation income tax return (Form 1120X) which included this item as the subject of a claim for refund, with interest. The claim was promptly disallowed as requested under applicable procedures in order that this suit for refund could be filed without delay.

### The Issue

This case presents a single issue: Does section 461(d)(1) of the code preclude plaintiff from accruing and deducting, on its federal income tax return for its taxable year ended December 31, 1974, more than one-half of the real estate taxes which the City of Boston on January 1, 1974, assessed against plaintiff for the city's fiscal year ended June 30, 1975?[6] If the answer to the question is "no," plaintiff would be entitled to deduct for a single federal taxable year 18 months' worth of real estate taxes assessed against it by the City of Boston.[7] If

4. Section 78 of chapter 849 of the Massachusetts Acts of 1969 refers to it as "the eighteen month fiscal year which begins on January first, nineteen hundred and seventy-three."

5. All statutory references are to the Internal Revenue Code of 1954 (26 U.S.C.), as amended and in effect for the year in question (the "code"), unless otherwise indicated.

6. The Government admits that, but for section 461(d)(1), the entire amount of the real estate

tax assessment for the fiscal year ended June 30, 1975, would be deductible by plaintiff on its 1974 return. In other words, it is uncontroverted that the "all events" test for the accrual of a liability set forth in Treas.Reg. § 1.461–1(a)(2) was satisfied in 1974 with respect to the aforementioned assessment.

7. Of course, the deduction of 18 months' worth would be available to plaintiff only with respect to the one taxable year ended December 31, 1974. In subsequent taxable years, plaintiff

the answer to the question is "yes," plaintiff's deduction for a single federal taxable year of real estate taxes assessed against it by the City of Boston is limited to 12 months' worth.

## The Statute

Section 461(d)(1) of the code reads:

(d) Limitation on acceleration of accrual of taxes.—

(1) General rule.—In the case of a taxpayer whose taxable income is computed under an accrual method of accounting, to the extent that the time for accruing taxes is earlier than it would be but for *any action* of any taxing jurisdiction taken after December 31, 1960, then, under regulations prescribed by the Secretary or his delegate, such taxes shall be treated as accruing at the time they would have accrued but for such action by such taxing jurisdiction. [Emphasis supplied.]

Treasury Reg. § 1.461–1(d)(2)[8] provides in part:

(d) *Limitation on acceleration of accrual of taxes.*— * * *

(2) For purposes of this paragraph—

* * * * * *

(iii) The term "any action" includes *the enactment or reenactment of legislation*, the adoption of an ordinance, the exercise of any taxing or administrative authority, or *the taking of any other step*, the result of which is an acceleration of *the accrual event* of any tax. * * *

(iv) The term "any taxing jurisdiction" includes the District of Columbia, *any State*, possession of the United States, city, county, municipality, school district, or other political subdivision or authority, other than the United States, which imposes, assesses, or collects a tax. [Emphasis supplied.]

Neither the phrase "time for accruing taxes" in section 461(d)(1) nor the phrase "accrual event of any tax" in Treas.Reg. § 1.461–1(d)(2) is defined in section 461(d) or in Treas.Reg. § 1.461–1(d).

## I.

A. Plaintiff argues that the Massachusetts legislation did not accelerate the *time* for accruing real estate taxes assessed by the City of Boston. Plaintiff anchors its argument to the fact that the legislation did not change the *month or day* of the assessment and lien date for the real estate taxes. January 1 was the assessment and lien date before the legislation was enacted. January 1 remains the assessment and lien date. Thus, the month and day of the accrual event[9] for the real estate taxes were not changed.

■ According to plaintiff, the phrase "time for accruing taxes" in section 461(d)(1) of the code refers only to the month and day of the accrual event for a tax and not to the calendar year of the accrual event. Plaintiff argues that since the Massachusetts legislation did not change the month or day of the accrual event for real estate taxes, the legislation did not make the "time for accruing taxes" earlier. If the legislation did not make the "time for accruing [real estate] taxes" earlier, section 461(d)(1), plaintiff states correctly, would be inapplicable to the deduction at issue in this case.

Defendant contends that the statutory phrase "time for accruing taxes" refers to the month, day, *and calendar year* of the accrual event for a tax. Defendant argues that section 461(d)(1) applies to two methods of accelerating the time for accruing a tax: (1) advancing the month or day of the accrual event, for example, from January 1 to December 31 of the preceding calendar year, and leaving unchanged the tax period

---

would be assessed for only 12 months and its deduction of real estate taxes assessed against it by the City of Boston would be limited to 12 months' worth.

**8.** Treas.Reg. § 1.461–1(d)(2), T.D. 6710, 1964–1 C.B. 175, 176.

**9.** The accrual event is the assessment and lien date for the taxes. *Magruder v. Supplee*, 316 U.S. 394, 62 S.Ct. 1162, 86 L.Ed. 1555 (1942) (Maryland taxes).

to which the accrual event relates; and (2) changing part or all of the tax period to which the accrual event relates to a later time period and leaving unchanged the accrual event.[10] Defendant asserts that the second method describes what the Massachusetts legislation has accomplished with respect to real estate taxes assessed by the City of Boston. More specifically, defendant asserts that the legislation has *accelerated* by 12 months the time for accruing *the* real estate *taxes assessed* by the city *for the last 6 months* of its fiscal year ending June 30.

With reference to the deduction at issue in the instant case, defendant argues that, but for the changes effected by the Massachusetts legislation, one-half of the real estate taxes assessed by the City of Boston against plaintiff for the city's fiscal year ended June 30, 1975, would have been assessed on January 1, 1975. The half in question represented the portion of the assessment for the fiscal year ended June 30, 1975, allocable to the period January 1, 1975, to June 30, 1975. Because of the legislation, this portion, along with the portion allocable to the first half of that fiscal year, was assessed on January 1, 1974. Thus, defendant argues, there was an acceleration of 12 months in the accrual event for one-half of the real estate taxes assessed by the city against plaintiff for the city's fiscal year ended June 30, 1975.

We agree with defendant. A real estate tax of the kind imposed by the City of Boston is assessed for a particular period of time. The Massachusetts statutes require that the assessors shall "annually" assess taxes,[11] that bills for taxes shall be sent out by a certain date of "each year,"[12] and shall be due and payable on July first of "each

year."[13] These statutes are not concerned merely with the assessment and collection of taxes as an abstract principle, but with *the taxes* for specific periods. This is clear from the express language of section 21, chapter 59, of the Massachusetts General Laws, effective July 1, 1973:

> * * * Except as otherwise provided, all taxes shall be assessed as of January first preceding the fiscal year with respect to which the taxes are assessed.

Common sense dictates that, to determine whether the accrual event for a tax for a particular period of time is accelerated, one refers to the calendar year of, as well as to the month and day of, the accrual event; and one relates the date (month, day, and calendar year) of the accrual event to the particular time period for which the tax is assessed.

That this holds true for purposes of section 461(d)(1) is made clear by the legislative history of the section. Section 461(d)(1) began its journey through Congress as section 3 of identical bills, H.R. 9625 and H.R. 9626, 86th Cong., 2d Sess. (1960). Although section 3 was a proposal to amend section 164(a)—not section 461— of the code, section 3 served as a point of reference for and was essentially the same proposal as S. 3103, 86th Cong., 2d Sess. (1960), the basic contents of which were enacted into law as section 461(d).[14] Section 3(a) of H.R. 9625 and of H.R. 9626 provided in part:

> * * * [I]n the case of a taxpayer on the accrual method of accounting no deduction shall be allowed for the taxable year *for any tax related to a definite period of time* which, except for action of any taxing jurisdiction * * * accelerating the accrual event *for such tax,*

---

10. The two methods constitute all conceivable methods of accelerating the time for accruing a tax.

11. Mass.Ann.Laws ch. 59, § 23 (1978).

12. Mass.Ann.Laws ch. 59, § 57 (1978).

13. *Id.*

14. Senator John J. Williams of Delaware introduced S. 3103 on the floor of the Senate. He

intended S. 3103, which was framed as a proposal to add a new subsection (d) to code section 461, to accomplish the same result as section 3 of H.R. 9625 and of H.R. 9626. His intent in this respect was made clear when, upon introducing S. 3103, he commented: "This same proposal is also being recommended in the House as a part of H.R. 9625." 106 Cong.Rec. 3564 (1960).

would have been deductible under the taxpayer's method of accounting *for the succeeding taxable year.* \* \* \* [Emphasis supplied.]

An explanation of section 3(a) was prepared by the Joint Committee on Internal Revenue Taxation and the Treasury Department.[15] The explanation read in part: "[Section 3(a) is a proposal for] an amendment which, in general, would deny an accrual basis taxpayer the right to deduct *more than 1 year's taxes which relate to a definite period of time in 1 Federal taxable year.*"[16] (Emphasis supplied.)

■ Our view that the "time for accruing taxes" refers not only to the month and day of the accrual event for a tax but also to the calendar year of the accrual event is reinforced by the following fact: section 461(d)(1) is applicable where an acceleration of the "time for accruing taxes" has been caused by "*any* action of any taxing jurisdiction." (Emphasis supplied.) The reach of the "any action" language in section 461(d)(1) is not restricted by any other language in section 461(d). Nor is its reach restricted by the definition of "any action" in Treas.Reg. § 1.461–1(d)(2)(iii), where it is provided: "The term 'any action' includes \* \* \* the taking of *any* \* \* \* step, the result of which is an acceleration of the accrual event of any tax." (Emphasis supplied.) Thus, neither the language of the statute nor that of the regulation supports plaintiff's contention that section 461(d)(1) applies only to accelerations which arise from an advancement in the month or day of the accrual event. To the contrary, the language of the statute and of the regulation supports defendant's argument that section 461(d)(1) applies to all methods of accelerating the accrual event, including the method whereby the month and day of the accrual event are not changed but part or all of the tax period to which the accrual event relates is changed to a later time period. Discerning no reason why we should not read section 461(d)(1) literally, we concur in defendant's argument that section 461(d)(1) applies to all methods of accelerating the accrual event.

■ With respect to the instant case, there has been an acceleration of 12 months in the accrual event for the *portion* of the real estate taxes, assessed by the City of Boston against plaintiff for the city's fiscal year ended June 30, 1975, *allocable to the period January 1, 1975, to June 30, 1975.* If the Massachusetts Fiscal Cycle Change legislation had not been enacted, the period January 1, 1975, to June 30, 1975, would have been included in the city's fiscal period which coincided with the calendar year 1975. Real estate taxes for that period, including the portion allocable to the first 6 months of that year, would have been assessed on *January 1, 1975.* Because of the enactment of the changes, the first 6 months of calendar year 1975 were included in the city's fiscal year ended June 30, 1975, and the real estate *taxes* for that fiscal year were assessed *January 1, 1974.*

B. Plaintiff argues:

\* \* \* [N]one of the taxes assessed on January 1, 1974, relate specifically to the period January 1 to June 30, 1975. The payment in question [plaintiff's payment of $514,666 to the City of Boston on April 30, 1975] simply represents one-half of the total assessment for the fiscal period July 1, 1974, to June 30, 1975. The assessment of the tax, plaintiff's liability for it, and the use of the funds by the taxing jurisdiction [the City of Boston] all relate to the entire fiscal period, to the extent they relate to any period. There is no basis under Massachusetts law for determining that any part of these taxes is attributable to the period after January 1, 1975.

Plaintiff's argument is misdirected in being focused on the Massachusetts statutes. The question here is whether section 461(d)(1) of the code was intended to deny deduction of

---

**15.** *The Technical Amendments Bill of 1960: H.R. 9625 and H.R. 9626:* An Explanatory Statement Prepared for the Committee on Ways and Means by the Joint Committee on Internal Revenue Taxation and the Treasury Department (Jan. 14, 1960).

**16.** *Id. at 3.*

a prorated part of a real estate tax assessed for a unitary tax period where not to deny deduction of such part would result in the deduction of more than 1 year's real estate tax. Whether Massachusetts law does or does not *expressly* recognize a proration of the tax is irrelevant.[17]

■■■ The intent of Congress in this respect is evidenced by a statement appearing repeatedly in the legislative history of section 461(d)(1):[18]

> [The proposal to be enacted into law as section 461(d)(1)] * * * in general would deny an accrual basis taxpayer the right to deduct *more than 1 year's* State taxes in 1 Federal taxable year. * * * [Emphasis supplied.]

Thus, Congress did not intend the application of section 461(d)(1) to be limited to situations where, but for section 461(d)(1), only *whole* additional years of state taxes would be deductible in one federal taxable year. Congress intended the section to have broader application. In short, Congress intended section 461(d)(1) to apply to *any amount*, fractional or otherwise, *exceeding 1 year's worth* of state taxes and being, but for section 461(d)(1), deductible in one federal taxable year.

Because Congress intended section 461(d)(1) to apply to such an excess fractional amount, Congress must have foreseen the necessity of relating the fractional amount to the period with respect to which the assessment, of which the fractional amount is a part, is made. The fractional amount must be related to this tax period to determine whether there has been an acceleration in the accrual event for the fractional amount. In the case of a real estate tax assessed for a tax period of 1 year—at least where state law governing the real estate tax does not contain explicit instruction with respect to the allocation of the tax over the tax-period year[19]—reason and practical application of the provision dictate and, therefore, we must assume that Congress intended that a fractional amount of the tax be related to the tax-period year on the basis of a proration of the tax equally over the tax-period year.

Hence, we find no error in the IRS allocation, for purposes of section 461(d)(1), of one-half ($514,666) of the real estate tax assessment made by the City of Boston against plaintiff for the city's fiscal year ended June 30, 1975, to the last 6 months of that fiscal year.

■■ C. Plaintiff argues:

What did change in 1974 was that plaintiff also had to pay $514,927 in taxes on May 16, 1974. This payment was made on account of an extraordinary assessment [made January 1, 1974, for the period January 1, 1974, to June 30, 1974], over and above the normal assessment. * * * The tax so assessed, which was due and payable on March 15, 1974, with May 1 as the last date for payment without penalty, was paid at a time when plaintiff would otherwise have had no current tax liability at all. In other words, if there had been no change in the Massachusetts real estate tax, plaintiff would not have had to pay one cent in real estate taxes before November 1. The tax was imposed by a special legislative enactment [concerning the transitional fiscal period January 1, 1973, to June 30, 1974], which was not part of the

---

17. It appears that, as of January 1, 1975, Massachusetts law contained no explicit instruction with respect to the allocation of the real estate tax over the fiscal-year period to which the tax relates. However, by providing that half of a real estate tax assessed by a city for its fiscal year ending June 30 could be paid without penalty on or before May 1 of the fiscal year and by providing that an interest penalty as to this half, if the half were not paid by May 1, would begin to accrue only from April 1 of the fiscal year, Massachusetts law recognized at least implicitly that half of the real estate tax was allocable to the last 6 months of the fiscal year (to the period January 1 to June 30).

18. S.Rep. No. 1910, 86th Cong., 2d Sess. 7 (1960); S.Rep. No. 1767, 86th Cong., 2d Sess. (1960), *reprinted in* 1960–2 C.B. 829, 838. *See* 106 Cong.Rec. 3563 (1960) (remarks of Senator Williams).

19. As stated in note 17, *supra*, this appears to be the case with Massachusetts law in effect January 1, 1975.

regular statutory structure and which left that structure intact. This extra tax thus had no effect on plaintiff's liability for its normal assessment [made January 1, 1974, for the fiscal year ended June 30, 1975], which, as demonstrated above, remained unchanged. * * *

In form and economic effect, then, the Massachusetts Fiscal Cycle Change legislation imposed a one-time tax increase for the year 1974, * * *. Clearly, Congress in passing § 461(d) had no intention of disallowing a deduction resulting from an increase in taxpayer's taxes. * * * Plaintiff's argument, that the amount of the real estate taxes assessed against it to cover calendar year 1974 was abnormally large, is fallacious. It is true that the real estate tax *liabilities* incurred by plaintiff in 1974 exceeded the amount of real estate tax liability normally incurred by plaintiff in a calendar year. It must be remembered, however, that the real estate tax liabilities incurred in 1974 related *to an 18-month period* : January 1, 1974, to June 30, 1975. If these liabilities are prorated equally over the 18-month period, the pro rata amount for calendar year 1974 is comparable to the amount of real estate taxes ordinarily assessed against plaintiff for a 12-month period. Thus, there was no abnormal increase in the real estate taxes assessed against plaintiff to cover calendar year 1974.

The *incremental* amount of the real estate tax liabilities incurred by plaintiff in 1974 was attributable, in the sense that the incremental amount reflected a deviation from past practice, to the January 1, 1974, assessment of the real estate taxes allocable to the period January 1, 1975, to June 30, 1975. Thus, even though plaintiff incurred the incremental amount of liability in 1974, this amount was payable without penalty until May 1, 1975.[20]

The *only* effect which the Fiscal Cycle Change legislation had on the real estate taxes allocable to calendar year 1974 was to accelerate the billing and collection dates

for the portion of these taxes allocable to the period January 1, 1974–June 30, 1974. Pursuant to the legislation, this portion was due and payable on March 15, 1974 (rather than July 1, 1974), and could be paid without penalty on or before May 1, 1974 (rather than November 1, 1974).

### II.

Plaintiff argues that the mere fact that state legislation has caused an acceleration in the accrual event for a tax is not sufficient to trigger the application of section 461(d)(1). In order for the section to be applicable, it is necessary in addition, plaintiff argues, that the state legislation be a tax "gimmick" having no effect on the state. According to plaintiff:

> * * *. * * * Congress intended [section 461(d)(1)] to apply *only* in a situation where a state legislature, without any effect on the state, enacted some form of "tax gimmick" through acceleration of the assessment, personal liability or lien date [the accrual event for a tax], whereby an accrual basis calendar year state taxpayer would be able to accrue and deduct [for federal income tax purposes] two years of state real property taxes in one taxable year. * * * [Emphasis supplied.]

Tax gimmick legislation of the kind described by plaintiff was enacted by the States of Ohio, Michigan, West Virginia, South Carolina, Virginia, and Kentucky in the years immediately preceding the enactment of section 461(d)(1) in 1960. In those years, these states made 1-day shifts in the assessment date for property taxes solely for the purpose of enabling local taxpayers to obtain, for federal income tax purposes, a *doubling up* of deductions for the property taxes. The shifts in the assessment date took the form of merely advancing the assessment date from January 1 to the preceding December 31.[21] The shifts were sponsored by taxpayers who were on the

---

**20.** In fact, plaintiff paid the amount on April 30, 1975.

**21.** In some instances, the lien date was also advanced from January 1 to the preceding December 31.

calendar year accrual method of reporting income.[22]

It appears that, unlike the state legislation referred to in the preceding paragraph, the Massachusetts Fiscal Cycle Change legislation is not a tax gimmick. Its enactment does not appear to have been motivated by a desire to give taxpayers an artificial tax benefit, and its impact on the financial condition of the political subdivisions of Massachusetts appears to be substantial. In oral argument before the court, defendant has admitted as much, at least for purposes of its motion for partial summary judgment. Therefore, the issue squarely posed by plaintiff is: Does the fact that the Massachusetts Fiscal Cycle Change legislation is not a tax gimmick render section 461(d)(1) inapplicable to the deduction at issue in this case?

Section 461(d)(1) applies, on its face, to "any action of any taxing jurisdiction" which causes an acceleration in the accrual event for a tax. There is *no* language in the statute which limits the applicability of the statute to actions which are tax gimmicks. Treasury Reg. § 1.461–1(d)(2)(iii) construes "any action" to include the "taking of any * * * step, the result of which is an acceleration of the accrual event of any tax." There is *no* language in the regulation which indicates that the meaning of "any action" is limited to enactment of a tax gimmick. Thus, section 461(d)(1), on its face and in language which

is unambiguous, applies to any action which causes an acceleration in the accrual event for a tax regardless of whether the action is a tax gimmick; and, furthermore, the regulation espouses a literal reading of the statute.

There are at least four cogent reasons for reading the statute literally. (1) Legislation permitting, through an acceleration of the accrual event for a tax, a one-time deduction of more than 1 year's worth of the tax in 1 taxable year would cause a substantial and permanent loss of federal income tax revenue *regardless of what motivates a taxing jurisdiction, e. g., a state legislature, to enact the legislation.*[23] (2) Regardless of the motivation for enactment of the legislation, the legislation would enable a taxpayer to distort, for federal income tax reporting purposes, its income for the taxable year in which more than 1 year's worth of the tax would be deductible.[24] (3) Limiting the applicability of section 461(d)(1) to tax gimmicks would be unmanageable because such a limitation would necessitate a difficult-to-make and often arbitrary determination of the subjective intent of a taxing jurisdiction. (4) Reading section 461(d)(1) to apply to *any* action accelerating the accrual event for a tax would not have any effect on the legislative authority of the taxing jurisdiction because the action would be disregarded only for federal income tax purposes.

**22.** The property tax of such a calendar year accrual basis taxpayer for 1958 would ordinarily have accrued on the assessment date, January 1, 1958. The property tax for 1959 would not have accrued until the assessment date, January 1, 1959. Thus, the taxpayer would ordinarily have accrued and deducted 1 year's tax in 1958. If, however, in 1958 the state enacted legislation which advanced the next year's assessment date from January 1 to the preceding December 31, such a device would place two assessment dates within the calendar year: January 1, 1958, which was the assessment date for 1958 taxes and December 31, 1958, which was the new assessment date for 1959 taxes. If this device were recognized for federal income tax purposes, it would have benefited calendar year accrual basis taxpayers by enabling them to accrue and deduct 2 years of taxes in 1 year.

**23.** In other words, the impact of the legislation on the federal income tax would stem not from what motivates a taxing jurisdiction to enact the legislation, but from the fact that the legislation accelerates the accrual event for the tax.

**24.** With respect to each taxable year preceding the taxable year in question, the taxpayer would have deducted only 1 year's worth of the tax. With respect to each taxable year subsequent to the taxable year in question, the taxpayer would be able to deduct only 1 year's worth of the tax. With respect to the taxable year in question, although the taxpayer would be able to deduct more than 1 year's worth of the tax, the taxpayer would be required *to pay only 1 year's worth.*

■ It is reasonable to assume that, in determining the language to be enacted as section 461(d)(1), Congress was cognizant of the aforementioned four considerations. Moreover, absent compelling reason to do otherwise, we must assume that Congress knew how to draft a narrowly applicable statute and that the fact that section 461(d)(1) was not narrowly drawn [25] was intentional on the part of Congress.

Although section 461(d)(1) was not narrowly drawn, plaintiff urges us to construe it as being limited in application to tax gimmicks. To support such a narrow construction of the statute, plaintiff emphasizes the undeniable fact that the legislative history of the statute centers on the need for preventing tax gimmick legislation of the kind discussed earlier from enabling a taxpayer to deduct *2 years' worth* of a tax in 1 taxable year. What plaintiff omits to mention in its discussion of the legislative history, however, is that (1) nothing in the legislative history indicates that section 461(d)(1) is to apply *only* to tax gimmicks; and (2) the legislative history states expressly that the section is to preclude a deduction of *more than 1 year's worth* of a tax in 1 taxable year. It is clear from the language of the legislative history that this is but another instance in which Congress, although concerned about a particular problem, enacted legislation that dealt more broadly with the area.[26]

It is immaterial whether we consider that Congress acted to close a loophole or to foreclose a gimmick (and both are mentioned in the congressional reports). In terms of the purpose of section 461(d)(1), the result is the same in either situation. It is clear from the legislative history that the

*problem* with which Congress was attempting to cope was a potential "permanent and significant loss of revenue." [27] Its basic concern was not with the motives of the respective state legislatures in amending *their* tax statutes; it was primarily concerned with the potential loss of revenue which could result from the existing state of its own legislation.

The issue whether section 461(d)(1) is limited in application to tax gimmicks has not been decided heretofore by this court. Nor has the issue been addressed and decided by any other court. We note that in *Epoch Food Service, Inc.*,[28] the United States Tax Court held that section 461(d)(1) was applicable to non-tax-gimmick legislation which caused an acceleration in the accrual event for a corporate franchise tax. However, the Tax Court was not asked to decide, and it did not expressly address, the tax-gimmick issue.

■ We think the reasons for reading section 461(d)(1) literally are compelling. What is perhaps more dispositive, we can discern nothing which militates against a literal reading. Hence, we hold that section 461(d)(1) applies to *any* action which accelerates the accrual event for a tax. Such action might, of course, be a tax gimmick; but it is not necessary that such action be a tax gimmick.

### III.

Plaintiff argues that the effect of this court's construing section 461(d)(1) to apply to any action accelerating the accrual event for a tax would be to repeal judicially section 461(c) of the code. Section 461(c) provides in pertinent part:

25. To limit the applicability of section 461(d)(1) to tax gimmicks would be in derogation of the unambiguous "any action" language in the section. We are reluctant to engage in a derogation of unambiguous language in any statute. With respect to section 461(d)(1), our reluctance is accentuated by the fact that the limitation which plaintiff urges us to impress on the section involves a determination of a slippery subject, namely, the subjective intent of a taxing jurisdiction.

26. *See generally Offutt Housing Co. v. County of Sarpy*, 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151 (1956); *Fort Dix Apartments Corp. v. Borough of Wrightstown*, 225 F.2d 473 (3d Cir. 1955), *cert. denied*, 351 U.S. 962, 76 S.Ct. 1024, 100 L.Ed. 1483 (1956).

27. S.Rep. No. 1767, 86th Cong., 2d Sess. (1960), *reprinted in* 1960–2 C.B. 829, 838.

28. *Epoch Food Serv., Inc. v. Commissioner*, 72 T.C. 1051 (1979).

(c) Accrual of real property taxes.—

(1) In general—If the taxable income is computed under an accrual method of accounting, then, at the election of the taxpayer, any real property tax which is related to a definite period of time shall be accrued ratably over that period.

\* \* \* \* \* \*

(3) When election may be made.—

(A) Without consent.—A taxpayer may, without the consent of the Secretary or his delegate, make an election under this subsection for his first taxable year which begins after December 31, 1953, and ends after the date of the enactment of this title in which the taxpayer incurs real property taxes. Such an election shall be made not later than the time prescribed by law for filing the return for such year (including extensions thereof).

(B) With consent.—A taxpayer may, with the consent of the Secretary or his delegate, make an election under this subsection at any time.

According to plaintiff, construing section 461(d)(1) to apply to any action accelerating the accrual event for a tax would transmute section 461(c) from an elective provision into a mandatory one.

■ Plaintiff's contention is untenable. While it is true that section 461(d)(1) supersedes section 461(c) in any situation where the two provisions would generate the same result,[29] it is not always the case that the two provisions generate the same result. If a taxpayer elects section 461(c), the taxpayer must accrue "any real property tax which is related to a definite period of time \* \* \* ratably *over that period*." (Emphasis supplied.) On the other hand, where section 461(d)(1) is applicable, a taxpayer must accrue taxes, *e. g.*, real property taxes, "at the time [such taxes] would have accrued but for such action [accelerating the accrual event for such taxes] by such taxing jurisdiction." Hence, the time for accrual prescribed by section 461(c) is not necessarily identical to the time for accrual prescribed by section 461(d)(1). This fact is demonstrated by the following example.

Suppose that, prior to 1974, the accrual event for the annual real property tax of state "X" occurred on January 1 of the calendar year preceding the calendar year to which the real property tax relates. Suppose further that, effective December 31, 1973, the date of the accrual event is advanced from January 1 to the preceding December 31. Hence, two accrual events would occur in 1973: the January 1, 1973, accrual event for the real property tax for calendar year 1974; and the December 31, 1973, accrual event for the real property tax for calendar year 1975. In this situation, section 461(d)(1) would apply to defer a taxpayer's accrual of the real property tax for calendar year 1975 to January 1, 1974, the date on which the tax would have accrued but for the advancement of the accrual date. However, by electing section 461(c), a taxpayer would be able to defer the accrual event to an even later date, namely, January 1, 1975, the beginning date for the calendar year to which the real property tax relates. Hence, in this situation, although section 461(d)(1) is applicable, it does not preempt the availability of an election pursuant to section 461(c). In short, the two provisions can be operative concurrently.

Moreover, section 461(c) is available for election in situations where section 461(d)(1) is inapplicable. For example, suppose a taxing jurisdiction has never accelerated the accrual event for a real property tax assessed for the calendar year. From the inception of the tax to the present, the accrual event for the tax has occurred on January 1 of the calendar year preceding the calendar year to which the tax relates. Because the taxing jurisdiction has never accelerated the accrual event for the tax, section 461(d)(1) is inapplicable. However, section 461(c) is available for election by a taxpayer. If a taxpayer elects this section,

---

**29.** Section 461(c) was enacted as part of the original Internal Revenue Code of 1954. From the time of its enactment to the time of the enactment of section 461(d)(1), taxpayers seldom elected it. This fact was noted in the legislative history of section 461(d)(1).

the accrual event for the tax is deferred to January 1 of the calendar year to which the tax relates.

Hence, construing section 461(d)(1) to apply to any action accelerating the accrual event for a tax would not sap section 461(c) of its vitality. The two subsections can be operative concurrently. Moreover, subsection (c) is available for election in some situations to which subsection (d)(1) is inapplicable. It is only in the situations with respect to which the two subsections would generate the same result that subsection (d)(1) supersedes subsection (c).

### IV.

Plaintiff argues that Rev.Rul. 75–157, 1975–1 C.B. 66, specifically authorizes it to deduct, for its taxable year ended December 31, 1974, the 18 months of real estate taxes which the City of Boston assessed against it on January 1, 1974. Plaintiff misreads the ruling. The ruling addresses the question of the proper time for deducting real estate taxes *assessed for the January 1, 1973–June 30, 1974, transitional fiscal period.* The ruling does not address the question of the proper time for deducting real estate taxes *assessed for the fiscal year ended June 30, 1975.* The deduction at issue in this case falls squarely into the latter category.[30]

Revenue Rul. 76–160, 1976–1 C.B. 129, addresses the question of the proper time for deducting real estate taxes assessed for the fiscal year ended June 30, 1975.[31] Relying on section 461(d)(1) of the code, it holds:

> [An accrual basis] taxpayer is not entitled to accrue on January 1, 1974, 18 months of real estate taxes assessed on January 1, 1974, but may accrue only the first 1974 assessment (which related to the period January 1 through June 30, 1974) and *half of the second 1974 assessment (which related to the period July 1, 1974*

*through June 30, 1975).* \* \* \* [Emphasis supplied. 1976–1 C.B. 129, 131.]

### V.

Section 461(d)(1) applies to all methods whereby the accrual event for a tax is accelerated. The section applies to an action accelerating the accrual event for a tax whether or not the action is a tax gimmick. This construction of the section does not amount to a judicial repeal of section 461(c).

Applying these principles to the case at hand, we affirm the disallowance by the IRS of $514,666 of the real estate tax deduction claimed by plaintiff on its federal income tax return for its taxable year ended December 31, 1974. Defendant's motion for partial summary judgment is granted; plaintiff's cross-motion for partial summary judgment is denied; plaintiff's claim with respect to the disallowance of the deduction for real estate taxes is dismissed; and the case is remanded to the trial division for further proceedings consistent with this judgment.

---

**30.** Having no requirement to consider section 461(d)(1) because the time for accruing real estate taxes assessed for the transitional fiscal period was not accelerated, Rev.Rul. 75–157 holds merely that an accrual basis taxpayer must accrue deductions *for those taxes* as of the January 1 on which they were assessed.

**31.** It should be noted that plaintiff is not the specific taxpayer involved in either revenue ruling.